```
                    UNITED STATES DISTRICT COURT
                 FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KATHLEEN M. DIETHORN,            :
                                 :
        Plaintiff,               :CIVIL ACTION NO. 3:04-CV-2788
                                 :
        v.                       :(JUDGE CONABOY)
                                 :(Magistrate Judge Smyser)
JO ANNE B. BARNHART,             :
Commissioner of Social           :
Security,                        :
                                 :
        Defendant.               :
```
_____

### **MEMORANDUM AND ORDER**

Before the Court is Magistrate Judge J. Andrew Smyser's Report and Recommendation, (Doc. 15), regarding Plaintiff Kathleen M. Diethorn's appeal of the denial of Social Security Disability Insurance Benefits ("DIB") filed pursuant to 42 U.S.C. § 405(g), (Doc. 1).  The Magistrate Judge recommends remand of Plaintiff's case for further consideration by the Commissioner.  (Doc. 15 at 14.)  Because Defendant has filed objections to the recommended disposition, (Doc. 16), we will make a *de novo* determination as to those portions of the report and the recommendations to which Defendant has objected.  See 28 U.S.C. § 636(b)(1)(C).  After a thorough examination of the record and carefully reviewing the matter *de novo*, we adopt the Magistrate Judge's Report and Recommendation in part and remand this case to the Commissioner for further consideration.

1

## **I. Background**[1]

Plaintiff applied for DIB on November 29, 2003, alleging that she had become disabled as of November 8, 2002, due to depression, anxiety and hypertension. After the claim was denied initially and upon reconsideration, Plaintiff filed a request for a hearing. The hearing was held before an Administrative Law Judge ("ALJ") on October 23, 2003.

Plaintiff, who was represented by counsel, testified at the hearing. A vocational expert also testified. Plaintiff was born in 1945, is a registered nurse and completed post graduate work. Her primary work experience was as a school nurse, a position from which she resigned in 1997. Plaintiff testified that she has been treating for depression for twenty-seven years but her condition worsened with the death of her husband on November 8, 2002. She also testified that her condition results in a lack of concentration, frequent crying, and lack of interest in doing things, including social interactions and household chores.

The vocational expert testified that Plaintiff's work as a school nurse was light work exertionally. The ALJ proposed a hypothetical question to the vocational expert, asking him to assume a person limited to medium work and needing to have a work environment without frequent interaction with the public and

---

[1] Background information is derived primarily from the Magistrate Judge's Report and Recommendation, (Doc. 15 at 1-3.)

without concentrated exposure to environmental respiratory irritants.  The vocational expert responded that this person could not perform previous work as a school nurse but could perform other jobs which existed in significant numbers.  These jobs included kitchen helper, hospital food service worker and machine feeder.

On November 23, 2003, the ALJ issued her decision denying Plaintiff benefits.  She made the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).
>
> 7. The claimant has the following residual functional capacity: she is limited to medium, unskilled work, not requiring

>              frequent interaction with the public, not
>              involving concentrated exposure to
>              environmental respiratory irritants, not
>              requiring frequent reading and writing,
>              and not involving more stress than is
>              typically found in routine, repetitive,
>              unskilled work.
>
> 8.  The claimant is unable to perform any of
>     her past relevant work (20 CFR §
>     404.1565).
>
> 9.  The claimant is an "individual of advanced
>     age" (20 CFR § 404.1563).
>
> 10. The claimant has "more than a high school
>     (or high school equivalent) education" (20
>     CFR § 404.1564).
>
> 11. The claimant has no transferable skills
>     (20 CFR § 404.1568).
>
> 12. The claimant has the residual functional
>     capacity to perform a significant range of
>     medium work (20 CFR § 416.967).
>
> 13. Although the claimant's exertional
>     limitations do not allow her to perform
>     the full range of medium work, using
>     Medical-Vocational Rule 203.15 & the
>     provision of SSR 83-14 as a framework for
>     decision-making, there are a significant
>     number of jobs in the national economy
>     that she could perform.  Examples of such
>     jobs include work as a kitchen helper,
>     1,000 in the region, 28,000 in several
>     regions and 1 million nationally; as a
>     hospital food service worker, 900 in the
>     region, 13,000 in several regions and
>     500,000 nationally; and as a machine
>     feeder, 1,000 in the region, 18,000 in
>     several regions and 700,000 nationally.
>
> 14. The claimant was not under a "disability,"
>     as defined in the Social Security Act, at
>     any time through the date of this decision
>     (20 CFR § 404.1520(f)).

(R. at 23-24.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner.

Plaintiff filed her appeal to this Court on December 23, 2004. Following the issuance of the Magistrate Judge's Report and Recommendation, (Doc. 15), on August 8, 2005, Defendant filed objections, (Doc. 16), on August 17, 2005.  Plaintiff filed a reply, (Doc. 17), on August 19, 2005.  Therefore, this matter is now ripe for disposition.

## II. Discussion

### A. STANDARD OF REVIEW

This Court performs a *de novo* review of those portions of the Report and Recommendation to which Plaintiff has objected.  28 U.S.C. § 636(b)(1)(C).  Our review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  The Court is "bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Plummer*, 186 F.3d at 427

(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). Therefore, we will not set aside the Commissioner's final decision if it is supported by substantial evidence, even if we would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (citing *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .").

**B.   DISABILITY DETERMINATION**

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[2] It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can

---

[2] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or with has lasted or can be expected to last for a continuous period of not less that 12 months . . .." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education , and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 C.F.R. §§ 416.920(a)-(f); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 888-89 (1990).  If, at any point during the sequential five-step analysis, it is determined that the claimant is not disabled, the claim will not be reviewed any further.  20 C.F.R. § 416.920(a).

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

In this case, the ALJ found Plaintiff's depression was a severe impairment but, evaluated under section 12.03 of the listed impairments, it was not severe enough to meet or equal a listed impairment.  (R. at 19-20.)  The ALJ then turned to whether Plaintiff had the residual functional capacity ("RFC") to perform the requirements of her past relevant work.  She determined that Plaintiff had the following RFC: "she is limited to medium, unskilled work, not requiring frequent interactions with the public, not involving concentrated exposure to environmental

7

respiratory irritants, not requiring frequent reading and writing, and not involving more stress than is typically found in routine, repetitive, unskilled work." (R. at 21, 23.)  Based on this RFC and the testimony of the vocational expert at the hearing, the ALJ found that Plaintiff could not perform her past relevant work. (*Id.*)

At step five of the evaluation process, the ALJ determined "[b]ased on the testimony of the vocational expert, . . . considering the claimant's age, educational background, work experience, and residual functional capacity," (R. at 23), Plaintiff is capable of performing work that exists in significant numbers in the national economy and, therefore, is not disabled. (*Id.*)

## C. DEFENDANT'S OBJECTIONS

The Magistrate Judge recommends remand of this case based on his findings that the ALJ did not properly consider a disability decision made by the Public School Employees' Retirement System ("PSERS"), (Doc. 15 at 8), and the ALJ's determination regarding Plaintiff's RFC is not supported by substantial evidence, (*id.* at 10-11).  Defendant objects to these findings.  (Doc. 16 at 1-2.)

### *1.   Public School Employees' Retirement System Disability Determination*

The Magistrate Judge recommended that this case be remanded to the Commissioner because the ALJ did not evaluate all relevant evidence, particularly the PSERS determination that Plaintiff is

disabled as to her school nurse work.  (Doc. 15 at 8.)  Defendant acknowledges that the ALJ did not specifically review the PSERS decision, but avers that this is harmless error in that the decision was not probative evidence.  (Doc. 16 at 7.)  The argument that this evidence is not probative is based on Defendant's assertions that PSERS employs a different standard for its disability determination and, to the extent that the PSERS finding relates only to Plaintiff's school nurse position, the ALJ's determination that Plaintiff could not return to this work is consistent with the PSERS determination.  (*Id.* at 8.)

The Third Circuit has recognized that it is necessary for the Secretary to analyze all evidence.  If he has not done so and has not sufficiently explained the weight he has given to all probative exhibits, "to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979).  As the Magistrate Judge recognized, a determination by another government agency that a claimant is disabled is entitled to substantial weight.  *See*, *e.g.*, *Kane v. Heckler*, 776, F.2d 1130, 1135 (3d Cir. 1985).  Although Respondent now distinguishes the PSERS determination, review of the evidence is specifically the duty of the ALJ - the Respondent cannot make up for the analysis lacking in the ALJ's report.  *See*, *e.g.*, *Fargnoli v. Massanari*, 247

F.3d 34, 42 (3d Cir. 2001). As such, the ALJ did not fulfill her obligation and, upon remand, must consider the PSERS determination.

### *2. Residual Functional Capacity*

Defendant raises two objections regarding the Magistrate Judge's findings related to RFC. First, Defendant asserts that the Magistrate Judge erred in his conclusion that it is the Commissioner's burden to prove that Plaintiff retained the RFC to perform other work existing in the national economy. (Doc. 16 at 2.) Second, Defendant objects to the Magistrate Judge's criticism regarding the ALJ's finding that Plaintiff could engage in medium work. (*Id.* at 15.)

We conclude that the RFC issue has been needlessly complicated in this case. Defendant's first objection is really an argument about who has the burden of establishing RFC and how that burden was carried out in this case.

Although the Magistrate Judge spoke in terms of burden of proof, there is no question that it is the ALJ's duty to establish a claimant's RFC. *See*, *e.g.*, *Newell v. Comm'r Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (citing *Burnett v. Comm'r Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000). There is also no question that the RFC is determined at Step Four where the plaintiff retains the burden of showing that she can no longer perform her past relevant work. *Id.* Rather than a conflict in responsibilities, this is a scheme where the ALJ makes a finding, based on all the evidence, on

what RFC the claimant retains and then, based on the evidence which the claimant has the burden of presenting, determines whether she can perform her past relevant work.  At step five, the Commissioner has the burden of showing that, given the established RFC, the claimant can perform other work existing in significant numbers in the national economy.  *Id.*

Here the Magistrate Judge may have somewhat conflated steps four and five and used some language in his analysis that misconstrues the burden allocation at step four.  However, rather than parse the Magistrate Judge's analysis line by line, we will consider whether his conclusion that the ALJ's RFC finding is not supported by substantial evidence is proper.  (Doc. 15 at 10-11.)

We concur with the Magistrate Judge that the ALJ did not adequately support her RFC determination.  The Magistrate Judge noted that Plaintiff's prior work as a school nurse was considered "light work" and the ALJ cited no evidentiary support for her finding that Plaintiff had the RFC to perform medium work.  (Doc. 15 at 12.)

Before stating her RFC determination, the ALJ broadly discussed medical evidence of record including a Medical Source Statement completed by Dr. Michael Sams.  (R. at 19-21.)  The ALJ stated that Dr. Sams found

> no limitations except for those related to her
> recent fracture affecting lifting and postural
> abilities (Exhibit 9F).  The undersigned
> accords appropriate weight to this assessment,

11

>       however noting that the only limitations are
>       directly related to her fractured humerus,
>       which should not affect her functioning for a
>       full year (Exhibit 9F).

(R. at 20.)  The ALJ did not review other medical evidence of physical problems experienced by Plaintiff.  However, she noted that Plaintiff testified that she uses Albuteral for chronic obstructive pulmonary disease twice a day, and takes Advair daily.  (R. at 19.)

The problem with the ALJ's determination that Plaintiff could do medium work is two-fold.  First, her conclusion that the Medical Source Statement showed no limitations that would last for more than a year is not supported by Dr. Sam's findings.  Second, medical evidence of record not discussed by the ALJ indicates physical limitations which may impact Plaintiff's ability to do medium work.

Regarding Dr. Sam's evaluation, he did not indicate that Plaintiff had no limitations except for those related to her fractured humerus.  Rather, he indicated that her lifting and carrying abilities were "difficult to determine" because of the fracture.  (R. at 309.)  He also stated that he did not have her squat or raise from squatting position due to balance issues related to her fracture.  (R. at 307.)  In assessing some postural activities (stooping, crouching, balancing and climbing), Dr. Sams made no findings, noting that Plaintiff's humerus fracture made balance difficult.  (R. at 310.)

12

This review of Dr. Sams' report indicates that - contrary to the ALJ's analysis - he did not conclude that Plaintiff had no limitations in her abilities to lift, carry, push, pull, stoop, crouch, balance or climb. (*See* R. at 309-10.)  Rather, Dr. Sams report indicates only that he was unable to determine Plaintiff's abilities in these areas.

Dr. Sams' specific language and the areas in which he did not test Plaintiff's abilities are important because all of these activities are related to a person's ability to lift.  This is particularly so given that medium work "involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds."  20 C.F.R. § 404.1567(c).  A related Social Security Ruling identifies the activities and abilities inherent in the lifting requirements of medium work: "frequent bending-stooping" are usually required and "[f]lexibility of the knees as well as the torso is important." Social Security Ruling 83-10, 1983 WL 31251, at *6.

Other physical findings made by Dr. Sams which may implicate lifting difficulties regard the spine and knee: "The spinal curves are not normal.  There is scoliosis and paraspinal muscle spasm noted in the lumbar spine. . . . The patient may note significant complaint of back or knee pain . . . ."  (R. at 307-08.)  He noted that her lateral flexion was "difficult."  (R. at 312.)

The significance of Dr. Sam's difficulty in evaluating some

categories of work-related physical activities is heightened by the fact that the ALJ did not adequately discuss probative evidence of Plaintiff's physical problems. Regarding knee pain, diagnostic tests showed "markedly decreased patellofemoral joint space bilaterally." (R. at 98.) Progress notes from Iron Ridge Family Practice indicate that, along with depression, Plaintiff's other physical problems include fibromyalgia and arthritis. (*See*, *e.g.*, R. at 369.) The ALJ did not discuss this and similar evidence.

Given the ALJ's duty to discuss probative evidence and the fact that she did not do so here, we cannot say that her decision regarding Plaintiff's RFC, specifically her ability to do medium work, is supported by substantial evidence. Therefore, this issue must be further developed upon remand.

Similarly, we conclude that the ALJ did not properly explain her RFC finding as it relates to Plaintiff's depression. Although the ALJ stated that she accorded Dr. Stanley Schneider's assessment appropriate weight, (R. at 20), she did not specifically explain why she discounted his assessment that Plaintiff's abilities to "deal with work stresses," "understand, remember and carry out detailed, but not complex job instructions," and "behave in an emotionally stable manner" were "poor to none." (*See* R. at 289.) Looking at her discussion of the issue, the ALJ may be inferring that the evidence she cites indicating an improvement in Plaintiff's condition in July and September of 2003 (Dr.

14

Picciotti's records) undermines Dr. Schneider's "poor to none" determinations in his assessment which was performed in February 2003 - "shortly after [her] husband's death." (R. at 21.) However, it is not our role to make these inferences - the factual rationale for a decision cannot be provided by the Court. *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Fargnoli*, 247 F.3d at 44 n.7.) Particularly in light of the fact that, as the ALJ herself noted, Plaintiff's therapist reported "some improvement in symptoms in May 2003, but a return of depressive symptoms thereafter (Exhibit 12F)," the ALJ must discuss why she discounted some of Dr. Schneider's findings. Her failure to do so in her decision is another reason we cannot say that her RFC findings are based on substantial evidence.

### III. Conclusion

For the reasons discussed above, we adopt the Magistrate Judge's Report and Recommendation, (Doc. 15), as modified and remand this matter to the Commissioner for further consideration. An appropriate Order follows.

                              S/Richard P. Conaboy
                              RICHARD P. CONABOY
                              United States District Judge


DATED: _September 22, 2005_____

```
                    UNITED STATES DISTRICT COURT
                 FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KATHLEEN M. DIETHORN,              :
                                   :
         Plaintiff,                :CIVIL ACTION NO. 3:04-CV-2788
                                   :
         v.                        :(JUDGE CONABOY)
                                   :(Magistrate Judge Smyser)
JO ANNE B. BARNHART,               :
Commissioner of Social             :
Security,                          :
                                   :
         Defendant.                :
```
_____

## **ORDER**

AND NOW, THIS 22nd DAY OF SEPTEMBER 2005, FOR THE REASONS SET FORTH IN THE ACCOMPANYING MEMORANDUM, THE FOLLOWING ORDER IS ENTERED:

1.  The Magistrate Judge's Report and Recommendation, (Doc. 15), is adopted as modified;

2.  Pursuant to the fourth sentence of 42 U.S.C. § 405(g), this matter is REMANDED to the Commissioner of Social Security for further consideration consistent with the accompanying Memorandum;[3]

3.  The Clerk of Court is directed to enter judgment in

---

[3] The fourth sentence of 42 U.S.C. § 405(g) provides that "[t]he courts shall have the power to enter, upon the pleadings and transcripts of the record, a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security with or without remanding the cause for a re-hearing." Accordingly, the Clerk of Court will be directed to enter judgment in accordance with this Order. See Kadelski v. Sullivan, 30 F.3d 399 (3d Cir. 1994).

accordance with this Order and to mark the matter in this Court CLOSED.

                                        <u>S/Richard P. Conaboy</u>
                                        RICHARD P. CONABOY
                                        United States District Judge